IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE WHITE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHESTER HOUSING AUTHORITY, ET AL. | : | NO. 17-1790 |

**MEMORANDUM**

**Padova, J.**                                                                                                          **April 4, 2018**

Plaintiff Jacqueline White commenced this employment action against Defendants Chester Housing Authority ("CHA"), Police Chief Rodney O'Neill, and CHA Deputy Executive Director and General Counsel Maria Zissimos, after she allegedly encountered discriminatory treatment while working as a police officer for CHA. Defendants have moved to dismiss the First Amended Complaint ("the Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, we grant Defendants' Motion in part and deny it in part.

**I.     BACKGROUND**

The Complaint alleges that CHA hired Plaintiff as a part-time police officer on July 29, 2010, and promoted her to a full-time police officer in May of 2012. (Compl. ¶¶ 19, 68-72.) Plaintiff worked at CHA until April 27, 2015, when she went out on leave following a back injury. (Id. ¶¶ 116-118.) The Complaint asserts that, while employed at CHA, Plaintiff suffered gender discrimination, endured a hostile workplace, and was retaliated against for complaining about discrimination and second-hand smoke in the workplace.

The bulk of the Complaint's allegations of gender discrimination center on conduct of

Plaintiff's supervisor, CHA Lieutenant Police Officer Louis Rodriguez.[1] The Complaint alleges that Rodriguez and other co-workers left pornographic magazines, including Penthouse, around the office and on Plaintiff's desk, and that Rodriguez "regularly" referred to Plaintiff as "bitch." (Id. ¶ 23.) In addition, there were workplace rumors about Plaintiff having sexual relationships with other employees, and O'Neill told Plaintiff that Rodriguez was the source of the rumors. (Id. ¶¶ 28-29.) When Plaintiff confronted Rodriguez, he began cutting Plaintiff's working hours. (Id. ¶ 31.) In addition, on January 12, 2011, Rodriguez sent a derogatory email to Plaintiff entitled "Classes for Women at the Adult Learning Center," which was about classes designed to increase women's intelligence. (Id. ¶ 34.)

On or around January 27, 2011, Plaintiff requested additional hours, hoping to get full-time status and noting that her male counterpart, Jeffrey Sewell, was working 60 hours every week. (Id. ¶ 35.) Sometime thereafter, Sewell was promoted to the position of detective, for which he received a pay raise. (Id. ¶ 36.) At the same time, Plaintiff was promoted to the position of "Assistant Detective," but did not receive a pay raise in conjunction with the promotion. (Id. ¶ 37.) She did, however, receive some additional benefits, including a laptop computer, a company car, and shared office space with Sewell. (Id. ¶ 38.) Six months later, Rodriguez advised Plaintiff that Sewell was getting a new office, and he demanded that Plaintiff vacate the shared office space and return to work in the common area. (Id. ¶ 39.) In late 2011, Rodriguez demoted Plaintiff from her position of Assistant Detective with no explanation. (Id. ¶ 41.)

On November 16, 2011, Rodriguez, after learning that Plaintiff had a gay relative, sent Plaintiff "an obscene email making a joke about gays in the military." (Id. ¶ 22.) On more than one occasion, Plaintiff complained to Defendant O'Neill that Rodriguez was harassing her, and at

---

[1] The Complaint also names Rodriguez as a Defendant. However, Plaintiff never served Rodriguez with the Complaint and, on January 29, 2018, with Plaintiff's agreement, we dismissed Rodriguez from this case without prejudice.

2

least once, O'Neill told Plaintiff to simply ignore Rodriguez, telling her that Rodriguez did not like women. (Id. ¶¶ 24-25, 32.) O'Neill never investigated Plaintiff's complaints. (Id. ¶ 33.)

In March of 2012, O'Neill told Plaintiff that her hair, which was in a ponytail, looked like "shit" and asked Plaintiff if he should hire another female police officer to teach Plaintiff how to style her hair. (Id. ¶¶ 51-52.) O'Neill also suggested that Plaintiff's hair was one of the reasons that she had not yet been promoted to a full-time officer. (Id. ¶ 53.) Another time, in April 2012, O'Neill told Plaintiff that she should wear less body spray. (Id. ¶ 62.)

The Complaint also alleges that, throughout Plaintiff's employment, Plaintiff's co-workers smoked cigarettes in the station and in the company vehicles. (Id. ¶ 43.) Because the station was not properly ventilated, and the windows did not open, Plaintiff could not air out the second-hand smoke. (Id. ¶ 44.) In early 2012, Plaintiff, who suffers from autonomic dysfunction,[2] began experiencing health problems, including frequent coughing and a sore throat. (Id. ¶¶ 45-46.) The symptoms of her condition were exacerbated by the second-hand smoke at work. (Id. ¶ 49.) In April 2012, Plaintiff complained to O'Neill that her respiratory issues were directly related to the second-hand smoke at the police station. (Id. ¶¶ 62-63.) Also in April 2012, Plaintiff was diagnosed with mammary duct estasia, which her physician stated was associated with chronic exposure to second-hand smoke in the workplace, and she underwent breast surgery for that condition that same month. (Id. ¶¶ 64-66.)

In May 2012, Plaintiff heard more rumors that Rodriguez had spread about her and decided to quit her job due to the ongoing harassment and retaliation. (Id. ¶¶ 68-69.) Two hours after she advised Defendants of her decision, Rodriguez and O'Neill came to her house, offered her full-time employment, and promised that the discrimination, harassment, and retaliation would

---

[2] According to the Complaint, autonomic dysfunction is a chronic condition that can cause, inter alia, dizziness and fainting, an inability to alter heart rate with exercise, digestive difficulties, and vision problems. (Id. ¶ 46.)

3

stop. (Id. ¶¶ 69-71.) As a result, Plaintiff accepted the full-time position. (Id. ¶ 72.) While employed full time, Plaintiff consistently worked in excess of forty hours per week, but was not paid overtime. (Id. ¶ 73.)

On June 5, 2012, Plaintiff reported to Zissimos that something needed to be done about the continuing discrimination, harassment, and retaliation from Rodriguez. (Id. ¶ 79.) Zissimos offered to have a meeting with Plaintiff and her harassers but never scheduled one. (Id. ¶ 80.)

In the meantime, Rodriguez continued to engage in conduct that Plaintiff found discriminatory. On December 27, 2012, after Plaintiff had conducted a full investigation in one of her cases, Rodriguez turned over the case to a male colleague to obtain a warrant, something he had done in prior cases as well. (Id. ¶¶ 81-82.) Plaintiff reported this conduct to O'Neill, but he took no action. (Id. ¶ 83.) Rodriguez also "consistently undermined . . . Plaintiff's authority," including on one occasion when he gave a citizen a thirty-day extension to register her car after Plaintiff issued a parking violation. (Id. ¶ 84.)

In early 2013, Rodriguez spread lies that Plaintiff was having an affair with O'Neill. (Id. ¶ 85.) Plaintiff was "horrified," and reported the rumors to O'Neill, who failed to investigate and instructed her to simply ignore Rodriguez. (Id. ¶ 86.)

In May 2013, O'Neill issued a memorandum that there was to be no smoking at the police station because there had been a complaint to Human Resources and doctors' notes had been presented showing that smoking was having negative health effects on some officers. (Id. ¶ 88.) Plaintiff hung up copies of that memo around the office, but Rodriguez tore the memos down when he saw them. (Id. ¶ 91.) Smoking continued in the office from April 2013 through October 2013. (Id. ¶ 93.)

There was no women's bathroom at the police station until 2013, when a bathroom was designated a women's bathroom. (Id. ¶ 94-96.) In June 2013, Plaintiff's male co-workers

4

removed the "Ladies' Room" sign from the women's bathroom and replaced it with a sign that said "BATHROOM." (Id. ¶ 94.) As a result, after three years of having to use the bathroom in the Men's locker room and finally obtaining her own restroom, Plaintiff again had no female-only restroom facilities. (Id. ¶ 94-96.) After a month, during which male officers left urine all over the bathroom that had previously been designated the "Ladies' Room," Defendants placed a lock on the bathroom door and gave Plaintiff the key. (Id. ¶ 97.)

On June 8, 2013, Rodriguez did not respond to a call from Plaintiff requesting back-up during a confrontation with perpetrators. (Id. ¶ 99.) Plaintiff reported this incident to O'Neill, who did nothing. (Id. ¶ 100.) On June 9, 2013, Plaintiff wrote a memo to O'Neill, Zissimos, and the Human Resources Department staff, following up on text messages that she had sent to O'Neill earlier. (Id. ¶ 101.) In the memo, she detailed the ongoing abuse and sex discrimination that she was suffering from Rodriguez. (Id.) She also stated in the memo that she felt that the discrimination and harassment was occurring because of her disability and her continuing requests for a smoke-free workplace. (Id. ¶ 102.)

Plaintiff filed a Charge of Discrimination with the EEOC and PHRC on June 14, 2013. See Compl. Ex. A. She checked the boxes on the charge form that indicated that she was pursuing claims of discrimination based on "retaliation" and "sex." She did not check the box next to "disability." The Charge describes the particulars of the charge, in full, as follows:

> I. On July 29, 2010, Respondent hired me as a Police Officer part time. On May 22, 2012, I became a full time officer, I have been constantly harassed during the course of my employment.
>
> II. Lou Rodriguez (Lieutenant) has constantly harassed me during my employment. Lt. Rodriguez has used the word "Bitch" in comments. Lt. Rodriguez would constantly say that "All women are bitches." I have reported this to Rodney O'Neill (Chief) however, Chief O'Neill has stated Lt. Rodriguez does not respect or like women. Chief O'Neill has spoken to Lt. Rodriguez[;] however, the harassment has not stopped.

5

> III. I believe Respondent discriminated against me based on sex (Female) and in retaliation for complaining in violation of Title VII of Civil Rights Act of 1964, as amended Title VII. I have complained to Respondent and the harassment has not changed despite my complaints. Chief O'Neill has told Lt. Rodriguez on several occasions verbally to stop harassing me and it continues.

(Compl. Ex. A, at 1.)

On June 25, 2013, Plaintiff was referred to a medical specialist for a chronic dry cough, which the specialist attributed to ongoing respiratory issues due to second-hand smoke. (Compl. ¶ 103.) Around that same time, her physician recommended that she avoid exposure to tobacco. (Id. ¶ 105.)

In September 2013, Plaintiff sent an email to O'Neill and Zissimos, telling them that Rodriguez had been smoking in the station. (Id. ¶ 109.) Zissimos then sent an email to Plaintiff and O'Neill, stating that she had personally visited the station and found no evidence of smoking. (Id. ¶ 111.) In response, Plaintiff provided photographs of ashtrays filled with cigarette butts in the station lunchroom. (Id. ¶ 112.) On October 10, 2013, Plaintiff provided a fourth note from a doctor, stating that she was suffering from respiratory illness due to cigarette smoke in the workplace. (Id. ¶ 114.)

On April 26, 2015, Plaintiff suffered a severe back injury and an injury to her right knee at work, after O'Neill insisted that she remove large piles of trash and construction debris, including a large, solid, bi-fold door and a large, broken television. (Id. ¶¶ 116-17, and 117 n.2.) Plaintiff filed a worker's compensation claim and went on leave from work on April 27, 2015. (Id. ¶ 118.) Plaintiff remains out of work due to her back and knee injuries. (Id. ¶ 120.) On July 29, 2015, Defendant terminated Plaintiff and/or caused her to be constructively discharged, by requiring her to return to work when she was still injured. (Id. ¶ 121.)

On January 17, 2017, the EEOC issued Plaintiff a Right to Sue letter arising out of her 2013 Charge of Discrimination. (Id. ¶¶ 5-6.) Plaintiff filed the instant action on April 19, 2017, and

filed an Amended Complaint on July 26, 2017. The Amended Complaint asserts claims of sex discrimination and retaliation against CHA pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 et seq. (Counts I-IV); a claim of aiding and abetting against all Defendants under the PHRA (Count V); a disability discrimination claim against CHA under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (Count VI); a claim for failure to pay overtime against all Defendants pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (Count VIII), and claims for violations of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 (Counts X and XI).[3]

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim,"

---

[3] The Complaint also asserted claims under the Family Medical Leave Act (Count VII), under the Pennsylvania Minimum Wage Act (Count IX), and for wrongful termination (Count XII). However, the parties have stipulated to the dismissal of those claims. (See Stipulation, Docket No. 10.)

Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

Defendants have moved to dismiss Plaintiff's claims for failure to exhaust administrative remedies, for failure to plausibly allege the elements of the claims, or as untimely under the applicable statutes of limitations.

### A. Failure to Exhaust

As noted above, Counts I-VI of the Complaint assert claims of sex discrimination, retaliation, and disability discrimination under Title VII, the ADA, and the PHRA. Defendants argue that we should dismiss these claims, which are based on retaliatory discharge, hostile work

8

environment based on gender, and disability discrimination, because Plaintiff failed to exhaust them.

It is well established that, as a precondition to filing an employment discrimination suit under Title VII, the ADA or the PHRA, a plaintiff must exhaust her administrative remedies. Webb v. City of Philadelphia, 562 F.3d 256, 262 (3d Cir. 2009) (citations omitted)); Churchill v. Star Enterprises, 183 F.3d 184, 190 (3d Cir. 1999). The purposes of this requirement are at least two-fold: it encourages the settlement of "disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court," Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996), and it puts the employer on notice of federal claims that are "likely to be filed against it," Barzanty v. Verizon Pa., Inc., 361 F. App'x. 411, 414 (3d Cir. 2010) (citing 42 U.S.C. §§ 2000e–5(b), (e) (1)). As a result, the "parameters of the civil action in the district court are defined by the scope of the EEOC investigation which [could] reasonably be expected to grow out of the charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) (citations omitted). We must interpret the administrative exhaustion requirement "in a nontechnical fashion,'" but must also be careful not to permit "the aggrieved party . . . 'to bypass the administrative process.'" Webb, 562 F.3d at 263 (quoting Ostapowicz, 541 F.2d at 398).

As an initial matter, there can be no question that Plaintiff failed to exhaust her retaliatory discharge claims because the Complaint alleges that Plaintiff was subjected to a retaliatory discharge on July 29, 2015, more than two years after she filed her EEOC Charge of Discrimination on June 14, 2013. (See Compl. ¶¶ 121-22, Ex. A.) Accordingly, Plaintiff's retaliatory discharge claims were not -- and could not have been -- within the scope of her original EEOC charge, and there is no allegation that she attempted to amend her Charge of Discrimination to add the alleged retaliatory discharge. We therefore grant Defendants' Motion insofar as it

9

seeks dismissal of Plaintiff's retaliatory discharge claims in Count II, IV and V for failure to exhaust administrative remedies.[4]

With respect to her hostile work environment claims, Plaintiff's EEOC Charge alleges that Plaintiff was "constantly harassed during the course of [her] employment," and states, more specifically, that "Rodriguez used the word 'Bitch'" and "would constantly say that 'All women are bitches.'" (Compl. Ex. A at 1 ¶¶ I-II.) The Charge further asserts that the alleged discrimination was a "continuing action," and that the violation took place over a period of years, from September 1, 2010 to June 14, 2013. (Id. at 1.) Accordingly, although Defendants argue that the Charge does not allege additional specific facts of severe and pervasive discrimination that are supportive of a hostile work environment claim,[5] we conclude that the allegations that Plaintiff was "constantly harassed" for a two-and-a-half year period during the course of her employment could "reasonably be expected" to give rise to an EEOC investigation into a hostile work environment. Id.; Ostapowicz, 541 F.2d at 398-99; see also Barzanty, 361 F. App'x at 414 (noting that hostile work environment claim was within the scope of an EEOC charge alleging "abusive atmosphere," because the phrase "abusive atmosphere" is a phrase that is interchangeable with "hostile work environment" (citing Anjelino v. New York Times Co., 200 F.3d 73, 94-95 (3d Cir. 1999)). We therefore deny Defendants' Motion insofar as it seeks to dismiss Plaintiff's hostile work environment claims based on a failure to exhaust.

---

[4] We do not read Counts I and III, which assert additional claims under Title VII and the PHRA, to assert claims of retaliatory discharge.

[5] "A hostile work environment exists when the 'workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Boyer v. Johnson Matthey, Inc., Civ. A. No. 02-8382, 2005 WL 35893, at *12 (E.D. Pa. Jan. 6, 2005) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 116 (2002)).

Finally, with respect to disability discrimination, the Charge of Discrimination does not mention that Plaintiff was suffering from any disability, and the only boxes checked on the Charge of Discrimination form are those for "sex" and "retaliation"; the box next to "disability" is empty. (See Compl. Ex. A at 1.) While Plaintiff points out that her EEOC Intake Questionnaire and ADA Questionnaire both address disability discrimination (id. at 7; Compl. Ex. B), such questionnaires do not define the scope of a plaintiff's claim. See Barzanty, 361 F. App'x at 415. As the United States Court of Appeals for the Third Circuit has explained, "the EEOC Charge Form and the Intake Questionnaire serve different purposes[;]" the questionnaire is designed to "facilitate[] 'pre-charge . . . counseling'" and the Charge Form is designed to "define the scope of the Commission's investigation and to notify the defendant of the charges against it." Id. (citations omitted). In light of these different purposes, a plaintiff may not "transfer the allegations mentioned only in the questionnaire to the charge itself," because "this would be prejudicial to the employer." Id. (citations omitted); see also Kellam v. Indep. Charter Sch., 735 F. Supp. 2d 248, 253 (E.D. Pa. 2010) ("If a claim is initially mentioned in a charge questionnaire but not included in the formal charge, then this claim is not exhausted."). Consequently, we conclude that Plaintiff did not exhaust her claim of disability discrimination, and we therefore grant Defendants' Motion insofar as it seeks dismissal of Count VI, Plaintiff's ADA claim, for failure to exhaust administrative remedies.

B.     FLSA

The Complaint alleges in Count VII that Defendants violated § 207 of the FLSA by requiring Plaintiff to work more than 40 hours per week and failing to compensate her with overtime pay. Defendants move to dismiss this claim because, inter alia, the Complaint fails to allege the necessary elements of the claim.

As a general matter, the FLSA requires most employers to pay time and one-half for all hours worked over 40 in a given workweek. See 29 U.S.C. § 207(a)(1). "Section 207(k) [of the FLSA], however, contains a partial exemption from the general overtime provisions, permitting public agencies to establish a 'work period' that lasts from seven to 28 days for employees engaged in law enforcement . . . ." Rosano v. Twp. of Teaneck, 754 F.3d 177, 185 (3d Cir. 2014) (quoting 29 U.S.C. § 207(k); see also id. (stating that "a 'work period' is 'any established and regularly recurring period of work'" (quoting 29 C.F.R. § 553.224(a)). Where a public agency adopts a 28-day work period for its employees engaged in law enforcement, "it need not pay overtime compensation to [those] employees until they have worked more than 171 hours in a 28-day period." Hughes v. Twp. of Franklin, Civ. A. No. 13-3761, 2015 WL 9462965, at *6 (D.N.J. Dec. 23, 2015) (citing 29 C.F.R. § 553.230(c)). Similarly, where a public agency adopts a fourteen-day work period for its employees engaged in law enforcement, those employees "may work 86 hours [in that work period] before triggering overtime requirements." Stewart v. Pemberton Twp., Civ. A. No. 14-6810, 2015 WL 5164717, at *3 (D.N.J. Sept. 2, 2015) (citing 29 C.F.R. § 553.230(c)). "[E]mployers seeking to qualify for the § 207(k) exemption need not express an intent to qualify for or operate under the exemption," they need only establish a qualifying work period, i.e., a work period between seven and 28 days. Rosano, 754 F.3d at 186.

Here, Defendants argue that the Complaint fails to state an FLSA overtime claim upon which relief can be granted because it fails to allege that CHA's policies regarding overtime pay were not in accordance with the exemption permitted in § 207(k). Indeed, the Complaint does not clearly allege the work period that Defendant has established. At one point, it suggests that Defendant has adopted a fourteen-day work period, alleging that "Defendants did not pay overtime for work in excess of forty-hours per week, despite requiring officers to work twelve hour shifts, or eighty-four (84) hours during a two week pay period." (Compl. ¶ 76.) At another point, it

12

suggests that the work period is one month, alleging that Defendants "would only pay overtime when an individual worked more than 172 hours per month." (Id. ¶ 75.) Notably, both allegations are suggestive that Defendant has adopted a work period that triggers the § 207(k) exemption, and are also suggestive that Defendant has complied with the overtime pay requirements permitted by that exemption, as they indicate that Defendant was not requiring its law enforcement employees to work more than 86 hours in a fourteen-day period or 171 hours in 28-day period.[6] We therefore conclude that the Complaint fails to allege facts that are supportive of an FLSA claim against a public agency employer such as CHA, and we grant Defendants' Motion insofar as it seeks dismissal of Count VIII, the FLSA claim, on that basis.

Significantly, Plaintiff does not respond to the substance of Defendants' argument that she has not pled facts to support a cognizable FLSA claim against CHA. She nevertheless requests in a footnote that she be granted "leave to amend her complaint to properly plead a cause of action under the [FLSA]." (Pl.'s Mem. at 3 n.3.) "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). Here, Plaintiff does not offer any explanation as to how she intends to amend her Complaint to remedy the pleading deficiency identified above, but we conclude that the ambiguity introduced by Paragraph 75, see supra note 6, weighs in favor of permitting Plaintiff leave to amend, because we simply are not certain that

---

[6] We recognize that the Complaint's allegation in Paragraph 75 that Defendants "would only pay [overtime] if an individual worked more than one-hundred seventy-two (172) hours per month" could be read as suggestive of a policy that is not compliant with § 207(k), because a "per month" policy would typically cover more than 28 days, and 72 hours is one hour more than § 207(k) permits in a 28-day work period. (Compl. ¶ 75.) However, given the similarity between the numbers alleged in Paragraph 75 and the work schedule permitted by § 207(k), we conclude that the allegation in Paragraph 75 is actually suggestive of a policy that complies with the exemption's requirements.

13

amendment would be futile.[7]  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation and internal quotation omitted)).  In addition, we do not believe that granting Plaintiff leave to amend this single claim of her Complaint at this stage of the proceedings would be inequitable.  We therefore grant Plaintiff's request for leave to amend her FLSA claim.

C. 42 U.S.C. § 1983

The Complaint alleges in Count X that Defendants are liable under § 1983 for violating her equal protection rights under the Fourteenth Amendment due to their "policy, custom, and/or practice of engaging in sexually harassing and/or other discriminatory conduct against Plaintiff because of her gender."  (Compl. ¶ 172.)  It alleges in Count XI that Defendants are liable under § 1983 for retaliating against her for exercising her First Amendment rights to assert a claim to the EEOC, insist on a smoke-free workplace, file a workers' compensation claim, and request reasonable accommodation to be free from workplace smoke.  (Compl. ¶¶ 182-83.)  Defendants argue that we should dismiss both of the § 1983 claims because they are barred by the statute of limitations or, alternatively, because the Complaint does not plausibly allege the elements of a Monell claim.

---

[7] Defendants also argue that Plaintiff's FLSA claim is barred by the applicable statute of limitations.  See 29 U.S.C. § 255(a) (providing that a plaintiff must bring an FLSA claim for unpaid overtime compensation within two years of its accrual, unless the claim alleges a "willful violation," in which case it may be commenced within three years of its accrual).  We do not reach that argument, however, because we dismiss the FLSA claim for failure to plead the essential elements of that claim.  It is nevertheless worth noting that Plaintiff does not substantively respond to this statute of limitations argument and offers no explanation as to how she proposes to amend her Complaint to address the purported statute of limitations bar.  We trust that Plaintiff will take Defendants' statute of limitations arguments into account before filing any second amended complaint that includes a revised FLSA claim.

14

1. Statute of Limitations

Section 1983 does not contain a specific provision regarding the time within which an action pursuant to that statute may be brought. See 42 U.S.C. § 1983. Consequently, federal courts apply the statute of limitations governing suits for personal injury in the state in which the action arises. City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 123 n.5 (2005) (citing Wilson v. Garcia, 471 U.S. 261, 275-76 (1985), and Owens v. Okure, 488 U.S. 235, 240-41 (1989)); see also Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (citations omitted). In Pennsylvania, the limitations period for a personal injury claim is two years. See 42 Pa. Cons. Stat. Ann. § 5524(2); see also Reyes v. Sauers, 453 F. App'x 138, 139 (3d Cir. 2011) ("Pennsylvania's two-year personal injury statute of limitations applies to [plaintiff's] § 1983 action." (citation omitted)).

Here, Plaintiff first asserted her § 1983 claims when she filed her Amended Complaint on July 26, 2017. However, she correctly asserts that her § 1983 claims relate back to the date of her original Complaint (i.e., April 19, 2017), because the claims arise out of the same essential conduct set out in the original pleading. See Fed. R. Civ. P. 15(c)(1) ("An amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading . . . .") Thus, any conduct that is alleged to have occurred on or after April 19, 2015 may provide a basis for a timely § 1983 claim.[8]

---

[8] Defendants urge us to find the § 1983 claims time-barred if they are based on actions that occurred before July 26, 2015, because they were not raised until Plaintiff filed the Amended Complaint on July 26, 2017. In advancing this argument, they completely fail to address Plaintiff's assertion that the § 1983 claims relate back to the original Complaint filed on April 27, 2017.

15

The Complaint alleges the following facts. On April 26, 2015, Plaintiff suffered a back injury at work when O'Neill "retaliat[ed] against [her] and . . . insist[ed] that [she] remove large piles of trash and construction debris, [including] a large, solid, bi-fold door and an extremely heavy and large broken television." (Compl. ¶ 117.) Due to that injury, Plaintiff pursued a worker's compensation claim and went out on leave on April 27, 2015. (Id. ¶ 118.) Thereafter, "on or around July 29, 2015, Defendant unlawfully terminated Plaintiff and/or caused Plaintiff to be constructively discharged by requiting her to return to work when she was still injured." (Id. ¶ 121.) Plaintiff claims that this termination was "in retaliation for asserting a worker's compensation claim . . . and in further retaliation for the ongoing complaints of gender/sex discrimination, disability discrimination, and for Defendant's failure to accommodate Plaintiff's disability." (Id. ¶ 122.)

Reading these allegations in the light most favorable to Plaintiff, we reject Defendants' argument that the Complaint alleges no conduct allegedly violative of § 1983 that occurred within the applicable two-year statutory period. We therefore deny Defendants' Motion insofar as it seeks dismissal of Plaintiff's § 1983 claims in their entirety on statute of limitations grounds.[9]

---

[9] Having concluded that the Complaint alleges conduct within the statutory period, we do not reach Plaintiff's additional argument that the continuing violations exception to the statute of limitations applies and permits her to rest her § 1983 claims on conduct outside the statutory period. See Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (explaining that "[t]he continuing violations doctrine is an 'equitable exception to the timely filing requirement'" and provides that where "a defendant's conduct 'is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred'" (first quoting West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995); then quoting Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)). Rather, we conclude only that, at this stage of the proceedings, the allegations of retaliatory conduct within the statutory period are sufficient to defeat Defendants' Rule 12(b)(6) argument that both claims are barred by the statute of limitations.

2. Failure to Alleged Elements of Claim

Defendants argue, in the alternative, that we should dismiss Plaintiff's § 1983 claims because they fail to plausibly allege the elements of a § 1983 claim pursuant to Monell. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote and citations omitted). Thus, in order to state a claim for relief under § 1983, "a plaintiff must demonstrate [that] the defendant, acting under color of law, deprived . . . her of a right secured by the Constitution or the laws of the United States." Id. (citations omitted). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). Rather, when a § 1983 claim is asserted against a municipal entity, a plaintiff must demonstrate that her constitutional deprivations were caused by an official policy or custom of the municipal entity or a failure by the municipal entity to train its employees. Id.; Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997); City of Canton v. Harris, 489 U.S. 378, 388 (1989). A municipal policy is a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'" Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting Monell, 436 U.S. at 690). A custom, on the other hand, "is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bryan Cty., 520 U.S. at 404). "In either of these cases, it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)

Defendants contend that the Complaint fails to plausibly allege either (1) a municipal policy or custom, or (2) a violation of any federally protected right. As noted above, the Complaint alleges generally that Defendants have "implemented and enforced a policy, custom, and/or practice of engaging in sexually harassing conduct and/or other discriminatory conduct against Plaintiff because of her gender" in violation of her equal protection rights under the Fourteenth Amendment. (Compl. ¶ 172.) It further alleges that Defendants were acting pursuant to a "municipal custom, policy, decision, ordinance, regulations, widespread habit, usage or practice" when they "engaged in conduct to quell her constitutionally protected speech and retaliate against her for exercising such speech." (Id. ¶¶ 187, 194.)

Defendants are correct that the allegations concerning a policy are entirely conclusory and the Complaint does not identify any "officially adopted" statement, ordinance, regulations or decision that would constitute a policy under Monell. Simmons, 947 F.2d at 1059. However, as detailed above, the Complaint does allege a continuing course of sexually discriminatory and retaliatory conduct about which Defendants O'Neill and Zissimos, alleged policymakers, were aware. (See, e.g., Compl. ¶¶ 32, 79, 101.) It further alleges that neither took action to curb that conduct (id. ¶¶ 33, 79-80, 87, 101-02), and, in fact, alleges that O'Neill engaged in certain allegedly discriminatory conduct himself (id. ¶¶ 51-53, 62). Thus, reading the Complaint in the light most favorable to Plaintiff, we conclude that it plausibly alleges that, through both participation and acquiescence, O'Neill and Zissimos permitted discriminatory and retaliatory conduct to become so widespread as to constitute an actionable "custom" under Monell. See Natale, 318 F.3d at 584. We also reject Defendants' contention that the Complaint fails to allege a violation of federally protected rights as it clearly identifies Fourteenth Amendment equal protection rights and First Amendment free speech rights as the federal rights that Defendants allegedly violated.

We therefore deny Defendants' Motion insofar as it seeks dismissal of Plaintiff's claims pursuant to 42 U.S.C. § 1983.

**IV.   CONCLUSION**

For the foregoing reasons, we grant in part and deny in part Defendants' Motion to Dismiss. Specifically, we grant the Motion with respect to the retaliatory discharge claims in Count II, IV, and V, the disability discrimination claims in Count VI, and the FLSA claims in Count VII. At the same time, we deny the Motion with respect to the hostile work environment claims in Counts III and V, and the § 1983 claims in Counts X and XI. We grant Plaintiff leave to file a second amended complaint to amend her FLSA claim only. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.